IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CR-82-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL WAYNE RADETSKI, | ) | |
| Defendant. | ) | |

On March 4, 2021, Michael Wayne Radetski ("Radetski" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed exhibits in support [D.E. 49, 49-1–49-3, 50]. On April 9, 2021, the government responded in opposition [D.E. 56]. As explained below, the court denies Radetski's motion.

I.

On December 4, 2017, with a written plea agreement, Radetski pleaded guilty to possession with intent to distribute a quantity of marijuana within 1,000 feet of a school (count two) and possession of a firearm in furtherance of a drug trafficking crime (count three). See [D.E. 25, 26]. On March 7, 2018, the court held Radetski's sentencing hearing and adopted the facts as set forth in the Presentence Investigation Report ("PSR"). See [D.E. 30, 35, 38]; Sent. Tr. [D.E. 44] 4. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Radetski to 60 months' imprisonment on count two and 60 months' consecutive imprisonment on count three, for a total sentence of 120 months' imprisonment. See Sent. Tr. [D.E. 44] 17–21. Radetski

appealed. See [D.E. 39]. On June 11, 2018, the United States Court of Appeals for the Fourth Circuit dismissed Radetski's appeal. See [D.E. 46].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

2

extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981

---

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Radetski contends he has made multiple requests for compassionate release to the warden, which the warden ignored or denied. See [D.E. 49] 2; [D.E. 49-3]. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Radetski's claim on the merits.

Radetski seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Radetski cites the COVID-19 pandemic, his age (45), his history as a smoker, his history of bipolar disorder, and his history of major depressive disorder. See [D.E. 49] 3–6; [D.E. 50]. Radetski also cites the conditions in prison, his rehabilitation efforts, his release plan, that he has served more than half of his sentence, that he earned his GED and has zero infractions, and his family's hardships. See [D.E. 49] 3–9; [D.E. 49-1]; [D.E. 49-2].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Radetski states that he is a former marijuana and tobacco smoker and has a history of bipolar disorder and major depressive disorder, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Radetski serves his sentence. Accordingly, reducing Radetski's

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the family circumstances policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Although Radetski contends that his children's mother is struggling to care for them, he does not state that the mother is incapacitated or unable to care for their children or that Radetski is the mother's only available caregiver. See [D.E. 49] 4–6. Accordingly, reducing Radetski's sentence is not consistent with application note 1(C). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Radetski's medical conditions, his rehabilitation efforts, that he has served over half of his sentence, that he has zero infractions and earned his GED, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Radetski's sentence. See High, 2021 WL 1823289, at *4–7; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Radetski is 45 years old and engaged in serious criminal conduct in 2016. See PSR ¶¶ 9–14. Radetski ran a marijuana distribution operation out of his home less than 1,000 feet from Dixon High School in Holly Ridge, North Carolina. See id. Radetski's chief clientele were high school students who purchased drugs from Radetski and then returned to the school's campus to smoke marijuana.

6

See id. On December 21, 2016, officers searched Radetski's home and discovered 156.2 grams of marijuana, drug paraphernalia, a loaded AR-15 .223 caliber rifle, a high-capacity drum magazine, a 9mm pistol, magazines, ammunition, and gun-smithing tools and accessories. See id. On February 14, 2017, Radetski spoke with officers, identified his marijuana supplier, and admitted to purchasing approximately 20 to 30 pounds of marijuana from him over the past year. See id. Radetski was ultimately accountable for selling drugs within 1,000 feet of a school and possessing a firearm in furtherance of a drug trafficking crime. See id. Radetski also is a violent recidivist with convictions for deceptive practices (two counts), robbery by use/threat of dangerous weapon, possession of a controlled substance, disorderly conduct-domestic abuse, assault on a female, possession with intent to use drug paraphernalia, and driving while license revoked not impaired by revocation. See id. ¶¶ 19–26. Radetski also has performed poorly on supervision. See id. ¶ 20. Nonetheless, Radetski has taken some positive steps while incarcerated on his federal sentence and does not have any infractions. See [D.E. 49] 1–2; [D.E. 49-2].

The court has considered Radetski's exposure to COVID-19, his medical conditions, his rehabilitation efforts, that he has served over half his sentence, that he has zero infractions and earned his GED, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Radetski's arguments, the government's persuasive response, and the need to punish Radetski for his serious criminal behavior, to incapacitate Radetski, to promote respect for the law, to deter others, and to protect society, the court declines to grant Radetski's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7;

7

Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

II.

In sum, the court DENIES Radetski's motion for compassionate release [D.E. 49].

SO ORDERED. This 20 day of May 2021.

JAMES C. DEVER III
United States District Judge